UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHELDON SCOTT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No: 3:21-cv-223-DRL |
| | ) |
| CITY OF SOUTH BEND, et al., | ) |
| | ) |
| Defendants. | ) |

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANT MERRICK GARLAND'S MOTION FOR SUMMARY JUDGMENT**

Defendant Merrick Garland, in his official capacity as Attorney General, respectfully submits this Statement of Material Facts in support of his motion for summary judgment:

1. Plaintiff Sheldon Scott was born in 1972. [Filing No. 65-1 (Deposition of Sheldon Scott ("Scott Dep.") at 7:22–23).]

2. Officer Scott was employed by the South Bend Police Department. [Filing No. 65-1 (Scott Dep. at 14:21–16:12).]

3. He began working for the South Bend Police Department in 2003. [Filing No. 65-1 (Scott Dep. at 14:21–23); Filing No. 65-2 (Officer Scott's Oath of Office with South Bend Police Department, Scott Dep. Ex. 2).]

4. In or around 2010, the South Bend Police Department allegedly recorded police officers' telephone calls, which spawned a series of long-standing lawsuits, commonly called the "tapes litigation."[1] [*E.g.* Filing No. 25 at 3–4 (Am. Compl. ¶¶ 16–18).]

---

[1] *See also City of South Bend v. South Bend Common Council*, 865 F.3d 889, 891 (7th Cir. 2017); *Young v. City of South Bend*, No. 3:12-CV-475-JVB-CAN, 2013 WL 5913812, at *1 (N.D. Ind. Oct. 31, 2013); *Young v. South Bend Common Council*, 192 N.E.3d 176, 178 (Ind. Ct. App. 2022), *transfer denied sub nom. Richmond v. South Bend Common Council*, 201 N.E.3d

5.      Officer Scott intervened in the tapes litigation in February 2018. [Filing No. 65-1 (Scott Dep. at 8:9–10:5); Filing No. 25 at 4 (Am. Compl. ¶ 19).]

**Officer Scott Was Assigned to the Project Disarm Regional Enforcement Task Force, but At All Times He Remained a South Bend Police Department Employee**

6.      In or around 2009, South Bend Police Department assigned Plaintiff Scott to work as a Task Force Officer ("TFO") with the Project Disarm Regional Enforcement Task Force (the "Task Force"). [Filing No. 25 at 4–5 (Amended Complaint ("Am. Compl.") ¶¶ 26–28).]

7.      Created as part of the Project Safe Neighborhoods initiative,[2] the Project Disarm Regional Enforcement Task Force is a joint collaboration between the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the South Bend Police Department (SBPD), Elkhart Police Department, St. Joseph County Police Department, and other entities, aimed at reducing violent crime in Northern Indiana by "us[ing] the combined resources of all the participating agencies to identify targets, proactively investigate and ultimately present for prosecution" individuals committing crimes involving firearms. [Filing No. 65-3 at 1 (Memorandum of Understanding at USA0000001); *accord* Filing No. 65-1 (Scott Dep. at 237:18–240:5).]

8.      As set forth in a Memorandum of Understanding, the South Bend Police Department, the Elkhart Police Department, and St. Joseph County Police Department (among others) assigned officers, troopers, and agents to work as Task Force Officers (TFO) on the Task

---

604 (Ind. 2023). The specifics of the "tapes litigation" are not centrally relevant to the ADEA claim against the federal government, but Defendant Garland includes them here for context and because Officer Scott claims that his removal from the ATF Task Force was motivated by his involvement in that suit. This Court may take judicial notice of the state and federal court decisions cited for this purpose, pursuant to Fed. R. Evid. 201. *See also* Wright & Miller, 21B *Fed. Prac. & Proc.* § 5106.4 (2d ed.) (discussing contours of the doctrine).

[2]  34 U.S.C. § 41504; *"Project Safe Neighborhoods," available at* https://www.justice.gov/psn (last visited May 31, 2023).

Force. [Filing No. 65-3 at 2 (Memorandum of Understanding at DEF0000002); Filing No. 65-1 (Scott Dep. at 240:6–22).]

9. As a Task Force Officer, Officer Scott understood his "primary mission" to be to "assist the Metro Homicide Unit" and "assist with shootings and other firearms-related activities." [Filing No. 65-1 (Scott Dep. at 16:13–17:4).]

10. The officers assigned to the Task Force continued to be "employees of [their respective] municipal police department[s]." [Filing No. 65-4 (Deposition of Kyle Lerch ("Lerch Dep.") at 11:21–12:11).]

11. The local law enforcement agencies—*i.e.*, the South Bend Police Department—continued to "provide for the salary and employment benefits of their respective employees" while those employees were assigned to the Task Force. [Filing No. 65-3 at 7 (Memorandum of Understanding at DEF0000007).]

12. The local law enforcement agencies "retain[ed] control over their employees' work hours, including the approval of overtime," while those employees were assigned to the Task Force. [Filing No. 65-3 at 7 (Memorandum of Understanding at DEF0000007).]

13. The Memorandum of Understanding contemplated that ATF might "reimburse overtime to the State and Local TFO's agency," when "funds [were] available" via the Department of Justice Asset Forfeiture Fund. [Filing No. 65-3 at 7 (Memorandum of Understanding at DEF0000007); *accord* Filing No. 65-1 (Scott Dep. at 17:17–19:3).]

14. Officer Scott's use of overtime while working on the Project Disarm Regional Enforcement Task Force fluctuated and was subject to operational needs, and there were times when he worked no overtime at all. [Filing No. 65-1 (Scott Dep. at 18:24–19:3).]

15. Officer Scott agrees that, as an employee of the South Bend Police Department, the South Bend Police Department's standards of conduct governed him at all times relevant to this lawsuit. [Filing No. 65-1 (Scott Dep. at 64:23–65:23).]

16. At all times working on the Task Force, Officer Scott's pay was issued by the City of South Bend. [Filing No. 65-1 (Scott Dep. at 229:2–5).]

17. Similarly, Officer Scott's W2 forms were issued by the City of South Bend. [Filing No. 65-1 (Scott Dep. at 230:14–19).]

18. Officer Scott never received a W2, 1099, or any other tax form from the federal government. [Filing No. 65-1 (Scott Dep. at 230:14–231:3).]

19. Officer Scott did not have any federal retirement plan; his retirement plan was through the City of South Bend. [Filing No. 65-1 (Scott Dep. at 231:4–18).]

20. While he was on the Task Force, Officer Scott's written performance evaluations were completed by the South Bend Police Department. [Filing No. 65-1 (Scott Dep. at 170:11–23, 229:6–230:13).]

21. Officer Scott never received an individualized written performance evaluation from the federal government. [Filing No. 65-1 (Scott Dep. at 230:9–13).]

22. Officer Scott did not attend the Federal Law Enforcement Training Center (FLETC) at any time that he worked on the Task Force. [Filing No. 65-1 (Scott Dep. at 227:21–228:1).]

23. The day-to-day supervision and administrative control of the Task Force Officers was the mutual responsibility of the participating law enforcement agencies, with the ATF Resident Agent in Charge (RAC) in Fort Wayne exercising operational control over the Task

Force. [Filing No. 65-3 at 2 (Memorandum of Understanding at DEF0000002); *see also* Filing No. 65-4 (Lerch Dep. at 14:9–21).]

24. When Officer Scott was first assigned to the Project Disarm Regional Enforcement Task Force, the Task Force coordinator in South Bend was ATF Special Agent (SA) David Albritten. [Filing No. 65-1 (Scott Dep. at 18:15–18).]

25. ATF did not have the power to take disciplinary action against Plaintiff Scott (or any other Task Force Officer). [Filing No. 65-4 (Lerch Dep. at 25:1–7).]

26. The Task Force Officers were "assigned credentials by the U.S. Marshal[s Service] that signifi[ed] them as task force officers." [Filing No. 65-4 (Lerch Dep. at 12:12–15).]

27. Under the terms of this special appointment, Officer Scott acknowledged and agreed that his assignment to the Task Force "d[id] not constitute employment by the United States Marshals Service, the United States Department of Justice, or the United States Government."[3] [Filing No. 65-5 (Special Deputation Appointment Paperwork for Officer Scott).]

28. Officer Scott specifically "agree[d] to perform the duties required under this Special Deputation with the knowledge that [he was] neither entering into an employment agreement with the Federal Government or any element thereof, nor being appointed to any position in the Federal Service by virtue of this special deputation." [Filing No. 65-5 (Special Deputation Appointment Paperwork for Officer Scott).]

---

[3] These credentials were only issued for a limited period of time, and thus were periodically renewed after they were first issued in 2010. In this exhibit, Defendant Garland has compiled Officer Scott's paperwork from 2010, 2012, 2014, 2016, 2018, and 2020, organized chronologically. The "Terms of Special Deputation" for each year are materially identical.

**Officer Scott Worked on Other Assignments for the South Bend Police Department at the Time He Was a Task Force Officer, and He Displayed Poor Conduct with Co-Workers, Subordinates, and Other Members of the Local Legal Community**

29. At the same time that he was assigned to the Project Disarm Regional Enforcement Task Force, Officer Scott also worked for the South Bend Police Department on other special assignments. [Filing No. 65-1 (Scott Dep. at 20:4–7).]

30. For instance, Officer Scott was a member of the SWAT (Special Weapons & Tactics) Team continuously from October 2005 to the present. [Filing No. 65-1 (Scott Dep. at 20:8–21:7).]

31. He served as Assistant Commander on the SWAT team from around 2016 to 2023. [Filing No. 65-1 (Scott Dep. at 20:21–21:3).]

32. Officer Scott assisted with numerous trainings at the South Bend Police Department, including firearms, chemical munitions, and taser training. [Filing No. 65-1 (Scott Dep. at 26:17–29:10).]

33. From 2016 to 2020, Officer Scott was the Assistant Commander of the St. Joseph County Drug Investigation Unit. [Filing No. 65-1 (Scott Dep. at 23:1–5, 232:9–11).]

34. As Assistant Commander, Officer Scott supervised approximately five employees. [Filing No. 65-1 (Scott Dep. at 23:6–24:16).]

35. In or around 2018, while drinking at a local bar in South Bend, Officer Scott (then the Assistant Commander of the DIU) got into an argument with a Deputy County Prosecutor, which culminated in Officer Scott punching the prosecutor in the face several times. [Filing No. 65-1 (Scott Dep. at 49:4–54:16 & 236:4–237:17); Filing No. 65-4 (Lerch Dep. at 46:14–47:3).]

36. In or around 2019, the South Bend Police Department launched an investigation into the Drug Investigation Unit. [Filing No. 65-1 (Scott Dep. at 38:11–49:3).]

37. The investigators learned that members of the Drug Investigation Unit were drinking alcohol in the DIU office. [Filing No. 65-1 (Scott Dep. at 54:17–56:11).]

38. The investigators interviewed several officers working on the Drug Investigation Unit as part of that inquiry. Those officers were extremely negative in describing Officer Scott's conduct and managerial style, including calling Officer Scott as an "absolute c--ksucker," a "people user," and characterizing him as a poor leader. [Filing No. 65-1 (Scott Dep. at 270:17–273:4).]

39. As a result of this investigation, the South Bend Police Department Drug Investigation Unit was disbanded, and the South Bend Police Department sent Officer Scott back to the assignment on the Project Disarm Regional Enforcement Task Force. [Filing No. 65-1 (Scott Dep. at 57:21–59:7).]

**South Bend Police Department Told ATF that It Was Imposing Three-Year Term Limits on the Project Disarm Regional Enforcement Task Force Assignment**

40. The South Bend Police Department imposes "term limits" on numerous work assignments, whereby employees can only work in the assignment for a period of time before they must re-apply to the assignment. [Filing No. 65-6 (Deposition of Scott Ruszkowski ("Ruszkowski Dep.") at 38:14–41:15).]

41. In or around 2019, during a labor management meeting with the Fraternal Order of Police (FOP), the FOP alerted the South Bend Police Department that it had neglected to enforce the term limits with the Project Disarm Regional Enforcement Task Force assignment. [Filing No. 65-6 (Ruszkowski Dep. at 38:16–44:2).]

42. Consequently, in or around 2020, the South Bend Police Department had a meeting with ATF Resident Agent in Charge Scott McCart and Special Agent Lerch, at which SBPD informed ATF that it intended to implement three-year term limits on the Project Disarm

Regional Enforcement Task Force. [Filing No. 65-6 (Ruszkowski Dep. at 38:16–40:5); *see also* Filing No. 65-7 (Deposition of Jason Biggs at 36:15–40:12); *accord* Filing No. 65-1 (Scott Dep. at 59:12–62:7, 76:11–20, 80:4–81:9).]

43. In June 2020, Officer Scott and Bayne Bennett, the other SPBD officer assigned to the Task Force, were called into a meeting with South Bend Police Department officials (Bert Wise, Jason Biggs, and Tim Lancaster) and were informed that the Project Disarm Regional Enforcement Task Force positions would be opened up for applicants. [Filing No. 65-1 (Scott Dep. at 83:15–23).]

44. Officer Scott did not ask Wise, Biggs, or Lancaster why the Task Force positions were be opened up. [Filing No. 65-1 (Scott Dep. at 84:4–22).]

45. Officer Scott says that, prior to this meeting, he had "heard . . . for years [that] this would be coming[,] eventually that [he] would be removed" from the Project Disarm Regional Enforcement Task Force due to his involvement in the "tapes case." [Filing No. 65-1 (Scott Dep. at 84:7–86:12).]

46. Officer Scott had heard that he would be removed from the Task Force "right after the wiretapping [investigation] started," *i.e.*, as early as 2010 (or around then). [Filing No. 65-1 (Scott Dep. at 84:23–88:3 & 160:13–14).]

**ATF Advised Officer Scott that His Personality Conflicts and Poor Conduct Were Causing Problems for ATF's Operations**

47. In or around 2019, ATF Special Agent Albritten retired, and Special Agent Kyle Lerch stepped into the role of coordinating the Project Disarm Regional Enforcement Task Force in South Bend. [Filing No. 65-1 (Scott Dep. at 18:15–18, 242:20–243:23, 259:10–13).]

48. On June 9, 2020, Scott McCart, the ATF Resident Agent in Charge (RAC), and Special Agent Lerch had a meeting with Officer Scott and Officer Bennett regarding the

application process for the Project Disarm Regional Enforcement Task Force. [Filing No. 65-8 (Lerch Dep. Exs. 4 & 5); Filing No. 65-9 (Plaintiff Scott's Response to Defendant Garland's Interrogatory No. 11).]

49. After meeting with both officers together, RAC McCart and Special Agent Lerch met with each individually. [Filing No. 65-8 (Lerch Dep. Exs. 4 & 5); Filing No. 65-1 (Scott Dep. at 258:6–259:6).]

50. During the meeting with Officer Scott, RAC McCart and Special Agent Lerch told Officer Scott that "his interactions with other detectives from [South Bend] and other agencies" were unacceptable, as "his actions/personality had negatively affected ATF's relationship with other [South Bend] Detectives and agencies, particularly, Elkhart ICE and Mishawaka."[4] [Filing No. 65-8 (Lerch Dep. Exs. 4 & 5); see also Filing No. 65-4 (Lerch Dep. at 35:8–39:13).]

51. Special Agent Lerch had also observed other shortcomings in Officer Scott's performance, such as his failure to complete required paperwork on time and lack of initiative in cultivating informants to generate prosecutions. [Filing No. 65-8 (Lerch Dep. Exs. 4 & 5); Filing No. 65-4 (Lerch Dep. at 24:2–11, 27:25–28:11, 35:8–39:13).]

52. Officer Scott alleges that, during this meeting, Special Agent Lerch "stated that he was intimidated by [Officer Scott's] work experience and [his] age and did not believe he could manage [Officer Scott] and that he is not a real supervisor for ATF."[5] [Filing No. 65-9 (Plaintiff

---

[4] "ICE" is the abbreviation for Elkhart County's Intelligence and Covert Enforcement unit. See http://www.elkhartcountyprosecutor.com/drug-enforcement (last visited May 31, 2023).

[5] Special Agent Lerch denies that he made any reference to Officer Scott's age at any point during this conversation (or at any other time). For purposes of summary judgment only, Defendant Garland takes as true Officer Scott's version of this conversation.

Scott's Response to Defendant Garland's Interrogatory No. 11); Filing No. 65-1 (Scott Dep. at 99:16–20, 266:12–267:12).]

53. Officer Scott did not ask Special Agent Lerch to explain what he meant by that alleged reference to age. [Filing No. 65-1 (Scott Dep. at 268:10–11).]

54. Other than this alleged single comment, Officer Scott does not claim that Special Agent Lerch referenced, mentioned, or made any other statements regarding Officer Scott's age during this conversation. [Filing No. 65-1 (Scott Dep. at 267:25–268:9).]

55. Officer Scott cannot identify any other instance in which Special Agent Lerch made any comments about Officer Scott's age at all. [Filing No. 65-1 (Scott Dep. at 268:12–14).]

**An Officer Older Than Scott Was Selected for the Task Force**

56. The South Bend Police Department subsequently provided Officer Scott information regarding the process for re-applying to the Project Disarm Regional Enforcement Task Force. [Filing No. 65-10 (Scott Dep. Ex. E).]

57. Officer Scott was told that, whereas officers applying for specialty units such as the Task Force "generally have to interview" for the position, because he was currently assigned to the Task Force, if he did not wish to interview, the South Bend Police Department would waive the interview requirement for him while still submitting his name for consideration for re-selection to the Task Force. [Filing No. 65-10 (Scott Dep. Ex. E); Filing No. 65-1 (Scott Dep. at 98:1–7); Filing No. 65-9 (Plaintiff Scott's Response to Defendant Garland's Interrogatory No. 5); *accord* Filing No. 65-4 (Lerch Dep. at 31:16–33:6).]

58. South Bend told him, as well, that "[i]f [he] prefer[red] to interview, [he was] welcome to do so, and [SBPD] would still submit [his] name[] for the ATF for review." [Filing No. 65-10 (Scott Dep. Ex. E); Filing No. 65-1 (Scott Dep. at 98:1–7).]

59. Officer Scott told the South Bend Police Department that he did not want to participate in the South Bend interview, although he said he would agree to participate in any interview conducted solely by ATF. [Filing No. 65-1 (Scott Dep. at 98:8–99:14); Filing No. 65-9 (Plaintiff Scott's Response to Defendant Garland's Interrogatory No. 5).]

60. In August 2020, South Bend Police Department posted the Project Disarm Regional Enforcement Task Force assignment for interested officers. [Filing No. 65-11 (Scott Dep. Ex. F).]

61. The position description stated "[t]he position [wa]s limited to a three (3) year tenure," with the potential for being extended an additional year subject to good performance, "making this job assignment a potential four (4) year maximum." [Filing No. 65-11 (Scott Dep. Ex. F at South Bend 02630).]

62. Officer Scott submitted a statement of interest for the position. [Filing No. 65-12 (Scott Dep. Ex. G).]

63. In September 2020, South Bend Police Department and ATF conducted joint interviews. [Filing No. 65-4 (Lerch Dep. at 31:16–33:6).]

64. Officer Scott did not interview, but his name was put forward for consideration. [Filing No. 65-4 (Lerch Dep. at 31:16–33:6); *accord* Filing No. 65-1 (Scott Dep. at 98:8–99:1).]

65. After the interviews were finished, ATF Acting Resident Agent in Charge Sean Skender, Assistant Special Agent in Charge Brendan Iber, and Special Agent Lerch conferred regarding the applicants. [Filing No. 65-4 (Lerch Dep. at 33:14–34:18).]

66. They decided to re-select Officer Bennett and to select Officer Brandon Stec, [Filing No. 65-4 (Lerch Dep. at 31:16–34:18); Filing No. 65-9 at 5–6 (Officer Scott's Answers to Defendant Garland's Interrogatory Nos. 6 & 7).]

67. Officer Scott was not re-selected for the Task Force based on his demonstrated history of lack of proactive work, his shortcomings in completing administrative paperwork, and his "behavior" and "interactions with other officers," which were "ruining relationships with other agencies and causing drama that the ATF did not want to be [involved] in." [Filing No. 65-4 (Lerch Dep. at 82:23–83:25).]

68. Officer Bennett is "older than [Officer] Scott by approximately 5 months." [Filing No. 65-9 at 6 (Officer Scott's Answers to Defendant Garland's Interrogatory No. 8).]

69. Officer Bennett was re-selected for the Task Force based on his experience and ability to work well with others. [Filing No. 65-4 (Lerch Dep. at 82:2–14).]

70. Officer Stec was selected for the Task Force "based on his ability to work proactive cases, his ability to work with others, his eagerness to help out other departments and his overall ability to work [] confidential informants and cultivate them." [Filing No. 65-4 (Lerch Dep. at 82:15–22).]

71. Special Agent Lerch testified at deposition that, during his time on the Task Force, Officer Stec has done more to proactively develop cases for prosecution, including conducting undercover operations and making controlled purchases, than Officer Scott had during his time on the Task Force. [Filing No. 65-4 (Lerch Dep. at 63:4–64:2).]

72. The South Bend Police Department informed Officer Scott of the decision not to re-select him for the Task Force, and Officer Scott did not ask for information about the selection process. [Filing No. 65-1 (Scott Dep. at 108:20–109:5).]

73. In late 2020, Officer Scott concluded the assignment with the Task Force and returned back to a patrol assignment (still with the South Bend Police Department). [Filing No. 65-1 (Scott Dep. at 17:9–16).]

**Officer Scott's Cause of Action under the ADEA Is the Only Claim against the Federal Government in This Case**

74. Officer Scott does not assert any causes of action against the federal government, other than his claim under the Age Discrimination in Employment Act. [*See generally* Filing No. 25 (Amended Complaint).]

75. Officer Scott does not assert any claim under the Age Discrimination in Employment Act against any other defendant in this litigation (*i.e.*, the "South Bend Defendants," namely the City of South Bend and its employees, Ruszkowski, Lancaster, Biggs, and Miller, named as defendants in this suit). [Filing No. 65-1 (Scott Dep. at 14:14–17); *see also* Filing No. 25 (Amended Complaint).]

76. Officer Taylor asserts no allegations or causes of action against the federal government. [*See generally* Filing No. 25 (Amended Complaint).]

    Respectfully submitted,

    ZACHARY A. MYERS
    United States Attorney

By:    */s/ J. Taylor Kirklin*
    J. Taylor Kirklin
    Assistant United States Attorney

    *Attorney for Defendant Merrick Garland*
    *Acting under Authority Conferred by*
    *28 U.S.C. § 515*

## CERTIFICATE OF SERVICE

I certify that on May 31, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> Daniel H Pfeifer
> dpfeifer@pilawyers.com
>
> Jeffrey S McQuary
> jmcquary@btlmlaw.com
>
> Angela N Johnson
> angela.johnson@faegredrinker.com

> /s/ J. Taylor Kirklin
> J. Taylor Kirklin
> Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204

*Attorney for Defendant Merrick Garland*
*Acting under Authority Conferred by*
*28 U.S.C. § 515*