UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHELDON SCOTT, *et al.*,

            Plaintiffs,

v.                                        CAUSE NO. 3:21-CV-223 DRL

CITY OF SOUTH BEND *et al.*,

            Defendants.

## OPINION AND ORDER

In 2018, South Bend Police Department (SBPD) officers James Taylor and Sheldon Scott intervened in a lawsuit against the City of South Bend concerning the recording of telephone lines at the police department. Both now bring First Amendment retaliation claims here. Officer Taylor says Police Chief Scott Ruszkowski, SBPD Division Chief Timothy Lancaster, Captain Jason Biggs, and Lieutenant Kayla Miller initiated unwarranted discipline against him for his participation in the state suit. Officer Scott says Chief Ruszkowski instituted term limits and allowed other officers to apply for his position as a task force officer in retaliation to his involvement. The South Bend defendants request summary judgment. The court grants it.

## BACKGROUND

On September 14, 2012, the South Bend Common Council filed a lawsuit against the City of South Bend City concerning the recording of telephone lines at SBPD. *See South Bend Common Council v. South Bend City Administration*, 71D07-1290-MI-159 (St. Joseph Sup. Ct.). On February 20, 2018, Officers James Taylor, Sheldon Scott, and Scott Hanley joined the lawsuit to stop the release of recorded conversations they had on SBPD telephone lines [69-5 at PDF p. 45; 69-2 at 10].[1] They claimed "a privacy

---

[1] The South Bend defendants inappropriately file exhibits *en masse*. The court elects not to strike these exhibits but commends the approach of filing singular exhibits by designation.

interest in the tapes and/or digital recordings, which allegedly contain recordings of [their] private phone conversations with South Bend Officer Brian Young, which were recorded without [their] consent." [69-5 at PDF p. 45]. They alleged in their complaint that the "recording of [their] private and personal conversations was done without consent or warning" [69-9 ¶ 14].

Officer Taylor worked for SBPD from 1993 until his retirement in 2021 [69-1 at 24, 28, 40]. He was promoted to detective in 2005 [69-1 at 24]. From 2016 to 2018, Officer Taylor's direct supervisor was then-Sergeant Jason Biggs [69-3 at 9:9-13, 28:8-14]. Sergeant Biggs continued to be in Officer Taylor's chain of command as he moved up the ranks to lieutenant and his current role as captain [69-3 at 7, 9]. From July 2018 to 2021, then-Sergeant (now-Lieutenant) Kayla Miller supervised Officer Taylor [69-4 at 11, 22].

Officer Taylor received disciplinary actions, warnings, and reprimands throughout his career: in 2000, 2001, 2004, and 2011 for driving incidents [69-1 at 42, 45, 47, 49; 69-1 at PDF p. 61, 65, 70, 72] and in 2016 for completing personal errands on duty [69-1 at 52, PDF p. 78]. Officer Taylor sometimes struggled with the timing and accuracy of his reports [69-7 at 53, 68-69; 69-4 at 25, 79-80; 69-3 at 94-95]. Both of his supervisors attempted to correct Officer Taylor's report writing, report submission, and performance on multiple occasions [69-3 at 115, 120, 122-123; 69-3 at PDF p. 118-122, 126-128]. In 2020, he was written up by both supervisors for multiple issues related to his reports [69-1 at PDF p. 113]. Then-Sergeant Biggs identified 27 different opportunities they tried to assist Officer Taylor with his performance issues [69-3 at 49].

Two years after joining the state suit, SBPD Internal Affairs began investigating Officer Taylor's policy violations and performance deficiencies [69-7 at 51; 69-3 at PDF p. 241; 69-1 at PDF p. 110]. After reviewing the information provided by Internal Affairs, Chief Ruszkowski implemented a performance improvement plan (PIP) on May 6, 2020 [69-7 at 81; 69-3 at 52, 53, 161; 69-5 at 33-34], in an attempt to help Officer Taylor "fix whatever it is that was broken" [69-5 at 82]. Officer Taylor was also placed on a

2

one-day suspension without pay, pursuant to standard procedure [69-3 at 180-181; 69-1 at PDF p. 122]. During the PIP, Officer Taylor disregarded a direct order by then-Sergeant Miller [69-3 at 57, PDF p. 246; 69-1 at 183, 185, PDF p. 133] and failed to submit a report [69-11 ¶ 6].

During the PIP, Chief Ruszkowski continued to be concerned about Officer Taylor's behavior and performance, as well as the potential he was experiencing memory loss, so he contacted human resources [69-11 ¶ 8-9]. Based on human resource's recommendation, Chief Ruszkowski placed Officer Taylor on light duty status pending the completion of a fitness for duty evaluation [69-1 at 116-117, 167, PDF p. 128]. Two weeks later, on September 28, 2020, he returned to full-duty status and completed the PIP [69-1 at PDF p. 131; 69-7 at 84]. He retired in 2021 [69-1 at 40].

Officer Sheldon Scott has worked for SBPD since 2003 [69-2 at 14]. He worked as a task force officer (TFO) with the Bureau of Alcohol, Tobacco, and Firearms (ATF) from approximately 2009 to 2020, when he returned to a patrol assignment [69-2 at 16-17]. As a TFO, Officer Scott remained employed by the SBPD, but was specifically assigned to a federal agency to assist the agency with law enforcement activities in the community [69-5 at 56]. He also maintained responsibilities with the SBPD, including serving as assistant commander of the Drug Investigation Unit (DIU) [69-2 at 37-38, 39, 41].

In late 2019 and early 2020, SBPD investigated multiple officers assigned to the DIU, including Officer Scott [69-2 at 37-38, 39, 41]. The investigation revealed that Officer Scott was involved in a bar fight and punched a local prosecutor [69-2 at 49, 50-52, 74]. The investigation also uncovered a lack of oversight with the DIU [69-2 at 57, PDF p. 84]. The DIU was disbanded [69-5 at 50, 83-85].

Later in 2020, the ATF's task force officer positions were posted with a term limit [69-7 at 89; 69-5 at 39-40; 69-2 at PDF p. 131]. The SBPD instituted term limits on non-patrol officer assignments in 2016 [69-7 at 87; 69-3 at 29; 69-5 at 43-44], but the ATF was initially overlooked as part of the term limit process until the Fraternal Order of Police raised the issue [69-5 at 41-43]. Officer Scott applied for a TFO position [69-2 at 102, PDF p. 135]. After interviews, the ATF did not select Officer Scott for the

3

assignment [69-6 at 32-34]. Officer Scott returned to patrol and continued his other assignments including with the SWAT, firearms training, and explosives ordinance teams [69-2 at 17, 20, 116].

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

Officer Taylor and Officer Scott argue that they were retaliated against because they exercised their First Amendment rights by participating in the state suit. Officer Taylor argues that he received unwarranted discipline due to his participation. Officer Scott argues that SPBD instituted term limits and allowed other officers to apply for his position as a TFO in retaliation for his involvement.

To establish a *prima facie* case of First Amendment retaliation, a public employee must show that (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter him from

4

exercising his First Amendment rights; and (3) his speech was a motivating factor in his employer's adverse action against him. *See Sweet v. Bargersville*, 18 F.4th 273, 277-78 (7th Cir. 2021) (citing *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 670 (7th Cir. 2009)). If the employee produces evidence to establish each element, the burden shifts to the public employer to demonstrate that it would have taken the same action regardless of the protected speech. *Id.* at 278. Even then, the employee can still survive summary judgment by producing evidence showing that the employer's proffered reason for the action was merely pretextual. *Id.*

The parties first argue whether joining the state suit was protected First Amendment activity. Whether a public employee's speech was constitutionally protected is a question of law. *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1115-16 (7th Cir. 2013). For a public employee's speech to be protected under the First Amendment, the employee must show that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient service. *Lett v. City of Chi.*, 946 F.3d 398, 400 (7th Cir. 2020).

There is no dispute that Officers Taylor and Scott joined the state suit as private citizens [69-5 at PDF p. 45]. The parties differ on whether the speech addressed a matter of public concern. Whether speech addresses a matter of public concern depends upon "the content, form, and context of [the speech] as revealed by the whole record." *Gustafson v. Jones*, 290 F.3d 895, 906-07 (7th Cir. 2002) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Speech is a matter of public concern if it relates to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee. *Connick*, 461 U.S. at 146.

Officers Taylor and Scott say their involvement in the state suit concerned the right of SBPD employees to maintain the privacy of their phone conversations on lines owned by the city. They argue that, though they undoubtedly wished to maintain the privacy of their own conversations, the lawsuit

also served as a deterrent to future unlawful intrusions into an officer's communications. Their brief dedicates four citation-free sentences to whether the speech addressed a matter of public concern. They marshal no evidence or case law to advance their position. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The state suit about these tapes was a matter of public discourse in South Bend. Officers Taylor and Scott joined the state suit to stop the release of their recorded personal conversations on an SBPD telephone line. They claimed a privacy interest in the tapes that were recorded without their consent, not just with another particular officer, but (as Officer Scott posited) even his spouse. They intervened because the existing parties did not adequately represent their personal interests in the tapes.

Their intervention concerned personal grievances of interest only to Officers Taylor and Scott and not a matter of public concern—that is, their expression addressed only something of personal effect and interest to them. *See Bivens v. Trent,* 591 F.3d 555, 561 (7th Cir. 2010). The form of expression was public, but the content and context of expression were personal. Though the suit may have concerned a subject of public interest—like many lawsuits do—their speech within this arena did not automatically make their remarks a matter of public concern, not when the content and context of their remarks, and their motive for making them, promoted only their private interests.

When "the speech concerns a subject of public interest, but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." *Id.*; *see, e.g., Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 410 (7th Cir. 1994) (although employee addressed widespread issues of large classes and general disorder in public high school, her expression concerned only her inability to control her students); *Smith v. Fruin*, 28 F.3d 646, 651-52 (7th Cir. 1994) (public employee's complaint about second-hand smoke in the workplace concerned his interests, albeit being on a subject of public debate); *see also Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008) (suit to redress personal grievances and seeking relief for employee alone was not a matter of public

6

concern); *Hagan v. Quinn*, 84 F. Supp.3d 826, 831 (C.D. Ill. 2015), *aff'd on other grounds,* 867 F.3d 816 (7th Cir. 2017) ("*expression* of their concern was purely personal—to protect their job and reputations").

These two officers intervened to protect their personal privacy interests. They were not granted any representative status or standing to protect the rights of other officers or the public at large. They sought no relief for other officers. That the lawsuit might have an ancillary deterrent effect doesn't reframe their expression, either in content or context, as a matter of public concern. This is a question of law. Without evidence or argument supported by case law from the officers that otherwise demonstrates that they meet this prong, the court must enter summary judgment for the defendants as a matter of law.

## CONCLUSION

Accordingly, the court GRANTS summary judgment for the South Bend defendants on the First Amendment retaliation claims [68]. With no objection, the court GRANTS the South Bend defendants' motion for leave to file excess pages in reply [86]. This order terminates the case.

SO ORDERED.

January 23, 2024                                    *s/ Damon R. Leichty*
                                                                   Judge, United States District Court